ROY STROUD, Respondent, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, June 26, 1923.

1. **CARRIERS: No Defense to Action for Discrimination in Supplying Cars, That Favored Shipper was Engaged in Interstate Shipping.** In an action under Revised Statutes 1919, sections 9985 and 9990, to recover treble damages for alleged preference in furnishing cars for shipping lumber, it is no defense that the favored shipper was engaged in interstate shipping, and an instruction in such an action which did not require a finding that the favored shipment was an intrastate shipment, *held* not erroneous.

2. **———: Instructions in Suit for Discrimination in Furnishing Cars, Held not Conflicting.** In an action for treble damages for discrimination in preferring shippers, who ordered and were furnished cars for shipping lumber, after plaintiff had ordered and before

cars were delivered to him, an instruction which permitted a re-
covery upon a finding of such preference, and that the cars
furnished the preferred shipper had not been used for the trans-
portation of material entitled to a preference, *held* not in conflict
with another instruction which precluded recovery if the jury
found that plaintiff, on June 12th, had ordered two cars which were
delivered on July 22, and that plaintiff had held such cars for
four days and failed to load same and thereafter consented to
their delivery to another shipper for loading.

3. ———: Instruction Failing to Require Finding That Discrimination
Between Shippers Was Undue and Unreasonable, Held not Er-
roneous. Failure of an instruction in an action to recover treble
damages for discrimination in furnishing cars to require a finding
that such discrimination was undue or unreasonable does not
render it erroneous, where plaintiff's evidence tends to show that
the discrimination complained of was as a matter of law undue
and unreasonable.

4. DAMAGES: Instruction on Measure of Damages for Discrimination
in Furnishing Cars, Held Proper. In an action for treble damages
for discrimination in furnishing cars to a shipper of lumber, an
instruction on the measure of damages requiring the jury to take
into consideration the reasonable value of plaintiff's lumber at the
date the cars should have been delivered and the reasonable market
value of the lumber at the time they were delivered, the verdict
to be for the difference between these two amounts not to ex-
ceed the amount prayed for, *held* proper.

5. CARRIERS: Damages for Discrimination in Furnishing Cars for
Shipment of Lumber, Held Excessive. In an action by a shipper of
of lumber for treble damages for discrimination in the furnishing
of cars, *held*, that an award of $1000 actual damages was in ex-
cess of the recovery authorized by the complaint, and such infirmity
was not cured by testimony that plaintiff, instead of 20,000 feet of
lumber, as alleged, had more than 32,000 feet ready for shipment.

Appeal from the Circuit Court of Ripley County.—*Hon.
Almon Ing,* Judge.

AFFIRMED (*on condition*).

*James F. Green* and *J. C. Sheppard* for appellant.

(1) It failed to require the jury to find that if there
were orders by other shippers subsequent to June 12,

212 M. A.—33

1920, and filled prior to respondent's order, that the shipments made in said cars were intrastrate, thereby making the Missouri statute applicable. Secs. 9985, 9993, R. S. 1919; Steele v. Railroad, 165 Mo. App. 311; C., R. I. & P. Ry. Co. v. Farmers Elevator Co., 226 U. S. 426, 33 Sup. Ct. Rep. 174; Southern Railway Co. v. Reid, 222 U. S. 424, 32 Sup. Ct. Rep. 140; Erie Railroad Co. v. People of the State of New York, 233 U. S. 671, 34 Sup. Ct. Rep. 756; People v. Commission, 135 N. E. 197. (2) The relative supremacy of the State and National power over interstate commerce needs little comment. Where there is conflict, the State legislation must give way. Indeed, when Congress acts in such a way as to manifest its purpose to exercise its constitutional authority, the regulating power of the State ceases to exist. Railway Co. v. New York, 233 U. S. 681; Taylor v. Taylor, 232 U. S. 363; Minnesota Rate Cases, 230 U. S. 352; McDermott v. Wisconsin, 228 U. S. 115; Railway Co. v. Hackett, 228 U. S. 559; Express Co. v. Croninger, 226 U. S. 491; Sells v. Railway Co., 266 Mo. 184; Thompson v. Railway Co., 262 Mo. 480; State v. Railway Co., 212 Mo. 658.

*Cope & Tedrick* for respondent.

All that respondent is concerned with is in establishing the fact that his shipment or rather intended shipment was intrastate. Puritan Coal Mining Co. v. Penn. R. R. Co., 237 Pa. St. 420. Affirmed in 237 U. S. 121; Missouri Pac. Ry. Co. v. Larabee Mills, 211 U. S. 612; Pub. Utilities Comm. ex rel. Hillsboro Coal Co. v. Cleveland C. C. & St. L. Ry. Co., 301 Ill. 219; Mulberry Hill Coal Co. v. Ill. Cent. Ry. Co., 257 Ill. 80. Affirmed in 238 U. S. 275; Chicago, Milwaukee & St. Paul Ry. Co. v. State Public Utilities Company of Illinois, 268 Ill. 49. Affirmed in 242 U. S. 333; Pa. R. R. v. Sonman Coal Co., 241 Pa. St. 487. Affirmed in 242 U. S. 120; State of Texas v. East Texas Ry. Co. Advance opinion.

Lawyer's Co-operative Pub. Co. of April 15, 1922, page 313.

BRADLEY, J.—This is an action based on sections 9985 and 9990, Revised Statutes 1919, to recover treble damages for alleged undue or unreasonable preference in furnishing cars to ship lumber. The case was tried before the court and a jury, resulting in a verdict for plaintiff for $1000, which was trebled in accordance with section 9990 and judgment rendered accordingly. Defendant filed motions for a new trial and in arrest. These were overruled, and it appealed.

This cause was here on a former appeal (Stroud v. Mo. Pac., 210 Mo. App. 311, 236 S. W. 891), and for a statement we refer to the cause as reported as the facts are substantially the same. An assignment here, however, relating to interstate commerce was not specifically decided on the former appeal.

Defendant contends that error was committed: (1) in refusing its instruction in the nature of a demurrer; (2) in giving plaintiff's instruction number 1; (3) in the instruction on the measure of damages, and (4) that the verdict is excessive.

The first assignment is based on the proposition that there is no substantial evidence tending to show any undue or unreasonable preference. As stated, the evidence at the second trial was substantially the same as that of the first, and on the former appeal we ruled that there was sufficient evidence to take the cause to the jury, and we adhere to that ruling.

Plaintiff's instruction number 1 is as follows: "The court instructs the jury that if you believe and find from the evidence in this case that the plaintiff, Roy Stroud, had, on the 12th day of June, 1920, a quantity of lumber placed at Oxly, Missouri, a station on defendant's rail-road; that said lumber was deposited at the place provided by defendant for receiving such shipments; and that plaintiff on said date made application to defend-

ant's agent at the said station for cars in which to ship his lumber; and that he tendered said lumber for shipment under the terms and conditions imposed by defendant; and if you further find that after the said cars were ordered by plaintiff and his application for same was filed and before said cars were delivered other shippers at the said station of Oxly, Missouri, engaged in the business of shipping lumber over defendant's railroad, ordered cars from defendant's agent at the station aforesaid, and that the defendant delivered cars to these shippers in preference to plaintiff and that the cars delivered to these other shippers were not to be used for shipping mine props or other mine material that had a preference under the Interstate Commerce Commission's ruling, offered in evidence; and if you further find that such preference, if any, resulted in a loss to plaintiff, then your verdict must be for plaintiff for such sum as you believe from the evidence he has been damaged, not to exceed $1000.''

Defendant challenges instruction number 1 on the grounds (a) that if failed to require the jury to find, before plaintiff could recover, that cars delivered to other shippers in discrimination against plaintiff were for *intrastate* shipments; (b) that instruction number 1 is in conflict with defendant's instruction number 4; (c) that instruction 1 fails to require the jury to find that there was any undue or unreasonable preference.

Defendant contends in effect that even though it subjected plaintiff to undue or unreasonable prejudice or disadvantage in failing to furnish cars, that it is not liable, if those whom it favored used the cars, furnished in discrimination against plaintiff, for interstate shipments; and that instruction number 1 should have required a finding on that question. We granted a rehearing in this cause, and when it was reargued, it was urged that a shipper had no redress under the State statute when discriminated against, if such discrimination was in favor of an interstate shipper. This ques-

tion was one of the grounds which caused us to grant a
rehearing. The question is: If an *interstate* shipper is
favored over an *intrastate* shipper, has the *intrastate*
shipper any remedy under the State statutes? On the
authority of Alexander v. Railroad, 282 Mo. 236, 221
S. W. 712, we answer the question in the affirmative.
In that case our Supreme Court *en banc* had under con-
sideration the same sections of our statutes as are in-
volved here. In the Alexander Case plaintiff sued to re-
cover treble damages and attorney's fee for refusing
to set a car of coal on a switch adjacent to plaintiff's
coal yard. The defendant contended that the petition
did not state a cause of action in that it was not alleged
that the car of coal was an *intrastate* shipment. It was
held that such an allegation was not necessary; that
such was a matter of defense. Defendant in the case
at bar does not specifically plead that the alleged favored
shipments were interstate, but we think the point is
sufficiently made. The court in the Alexander Case said:
"Neither do we think that appellant's contention that
'before appellant can be held liable it must be shown
that it gave undue or unreasonable preference' to some
person other than respondent, is well taken. If ap-
pellant's construction of this statute were sustained, a
common carrier could refuse to deliver shipment to one
consignee, and yet if it gave no special preference to
other consignees it could not be held to have violated
the law. We do not understand the law to mean that a
common carrier may, without just reason, ruin a man's
business by refusing to serve him, and then escape liabil-
ity therefor merely because the injurd on cannot prove
that the carrier has shown an undue preference toward
another. Section 3184, supra, does, it is true, forbid a
common carrier 'to give any undue or unreasonable pref-
erence or advantage to any particular person,' but with
equal clearness it also forbids a common carrier 'to sub-
ject any particular person—to any undue or unreason-
able prejudice or disadvantage.' Either act is an of-

fense against the law. Both might be committed at the same time, and, conceivably in the same transaction, but the offenses are not necessarily *concomitant,* nor in any sense *interdependent. It is not necessary for the carrier to violate the law twice in order to be held liable once."* (Italics ours.)

To give one shipper "undue or unreasonable preference or advantage" is bound to result in "undue or unreasonable prejudice or disadvantage" to some other shipper, because there could be no *advantage* if only *one* shipper were involved. Plaintiff not only charged that another shipper was favored over him, but he also charges in effect "undue or unreasonable prejudice or disadvantage." In fact it seems to use that a charge of "undue or unreasonable preference or advantage" is equivalent to a charge of "undue or unreasonable prejudice or disadvantage." The converse, however, would not always be true, because a carrier could refuse to serve a shipper, and the refusal would work a great hardship, although no other shipper was favored. The Alexander Case holds that either act, "undue or unreasonable preference or advantage," or "undue or unreasonable prejudice or disadvantage," is an offense against the law. "It is not necessary for the carrier to violate the law twice in order to be held liable once," as said in the Alexander Case. As we read that case it was not especially necessary for plaintiff in the case at bar to show that other shippers were *favored,* it was sufficient for him to show that he was subjected to "undue or unreasonable prejudice or disadvantage." In establishing the latter fact, however, plaintiff's evidence established the former. But his *burden* was not the establishment of the fact that some other shipper has been given "undue or unreasonable preference or advantage," but that he had been subjected to "undue or unreasonable prejudice or disadvantage." Instruction number 1 is framed with the idea of *preference* to other shippers, but the establishment of that fact also established

in this case the fact that plaintiff was subjected to undue or unreasonable prejudice or disadvantage. It is our conclusion that the character of the shipment or shipments, whether intrastate or interstate, that were favored over plaintiff, is not of consequence, and that if an *intrastate* shipper is subjected to ''undue or unreasonable prejudice or disadvantage'' from favoring and *interstate* shipper, that such *intrastate* shipper can recover under the State statute. It was not necessary, therefore, for plaintiff's instruction to require a finding that the shipments alleged to have been favored over plaintiff were *intrastate*.

Defendant says that plaintiff's instruction number 1 is in conflict with its instruction number 4. Instruction 4 is as follows: ''The court instructs the jury that if you believe and find from the evidence in this case that on June 12, 1920, plaintiff placed with the agent of defendant at Oxly, Missouri, an order for two cars to be loaded with lumber to be shipped from Oxly, Missouri, to St. Louis, Missouri, and that afterwards, on the 22nd day of July, 1920, defendant furnished said cars to plaintiff at Oxly, and that plaintiff held said cars at Oxly for four days and failed to load same, and consented that said cars might be delivered to A. M. Rash for loading, which was done, then your verdict should be for the defendant.'' Defendant contends that instruction number 1 permitted the jury to find for plaintiff even though they believe that he was furnished cars on July 22, 1920, as they might have found there was discrimination prior to July 22nd. No date is mentioned in instruction 1 as the date July 22nd in instruction 4 is mentioned. By instruction 4 the jury was told plainly that if the cars were delivered, etc., on July 22nd then plaintiff could not recover. We do not think that the jury was misled or confused, hence we rule this point against defendant.

Defendant challenges instruction number 1 because it fails to require a finding that the discrimination was

*undue or unreasonable,* but if defendant discriminated against plaintiff, as his evidence tended to show then such discrimination was as a matter of law undue and unreasonable, and under the facts here, it was not necessary to submit that issue. The instruction requires a finding of facts which if true shows that plaitniff was subjected to undue or unreasonable prejudice or disadvantage.

Plaintiff's instruction on the measure of damages is as follows: "The court instructs the jury that if you find for the plaintiff, you should, in assessing his damage, take into consideration the reasonable market value of plaintiff's lumber at the date the cars ordered by plaintiff, on the 12th day of June, 1920, should have been delivered by the defendant, allowing defendant a reasonable time in which to make said delivery, and the reasonable market value of the lumber at the time defendant did deliver the cars so ordered, and your verdict should be for the difference between these two amounts not to exceed $1000." We think that this instruction is proper and is not subject to the criticism leveled against it.

Is the verdict excessive? Plaintiff alleged: "That on June 12, 1920, he had placed ready for shipment at Oxly, Missouri, a station on defendant's railroad, 20,000 feet of hardwood lumber, which was at the time of the reasonable market value of $60 per thousand and which he had contracted to sell at that price, provided same could be delivered within a reasonable time, and on that date made application for two cars of defendant's agent at the station of Oxly and requested that same be delivered to him at that station for the purpose of transporting his said lumber over defendant's railroad from Oxly, Missouri, to St. Louis, Missouri."

Plaintiff had contracted to sell this lumber to one Arnold at $60 per thousand. Arnold had advanved $600 on the lumber, and because thereof accepted a car loaded on August 23rd. The number of feet in this car was

estimated at from 10,000 to 11,625. This left, according to plaintiff's petition, not over 10,000 feet. The evidence showed that the market value on June 12th was $60 per thousand, and that there was practically no market in August when plaintiff was furnished cars.

Confining plaintiff to his petition he sustained no loss except on the 10,000 feet left after Arnold's car was accepted. Plaintiff disposed of the remaining 10,000 feet at an average of $9.75 per thousand. Hence on the 10,000 feet remaining he sustained a loss equal to the difference between $9.75 per thousand and $60 per thousand, which loss on the 10,000 feet amounted to $502.50. This conclusion is inevitable if plaintiff is to be bound by his petition, and that he is so bound is the rule. [Davis v. Bond, 75 Mo. App. 32; Leavel v. Johnston, 209 Mo. App. 197, 232 S. W. 1064.] We have averaged the price for which plaintiff disposed of his lumber locally, because there is no satisfactory evidence that there was any *market,* as that term is generally understood, when plaintiff was furnished cars in August. As stated plaintiff *alleged* that he had 20,000 feet of lumber for shipment on June 12th when he ordered two cars. He testified that he had on that date between 31,000 and 32,000 feet. It is on this *evidence,* and on the *assumption* that the 31,000 or 32,000 feet could have been shipped in two cars that plaintiff attempts to sustain his verdict for $1000; but plaintiff ignores his petition in arriving at the result.

Based on the petition plaintiff's verdict could not exceed $502.50. The verdict of $1000 returned by the jury was trebled, and plaintiff had judgment for $3000. Plaintiff's judgment under his petition cannot exceed $1507.50. If plaintiff will within ten days from the date of filing this opinion file here a remittitur of $1492.50, the judgment for $1507.50 will be affirmed, otherwise the cause will be reversed and remanded. *Cox, P. J.,* and *Farrington, J.,* concur.